IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

KELVIN MARSHALL KENNY,

                         Plaintiff,

  v.

LPN BRANDI MALCOOK,

                         Defendant.

OPINION and ORDER

23-cv-697-jdp

Plaintiff Kelvin Marshall Kenny, proceeding without counsel, alleges that while he was held at the Rock County Jail he received inadequate medical care for nerve pain in his back and arms. He brings a medical care claim under the Eighth Amendment against defendant Brandi Malcook, the nursing site manager at the jail.

Malcook moves for summary judgment. Dkt. 38. The evidence shows that Malcook promptly responded to Kenny's complaints about nerve pain, gave him advice based on her medical judgment, and shared his concerns with the jail's health care provider, Dr. Caroline Pace. Malcook didn't respond to Kenny's initial complaint about nerve pain, but there's no basis to infer that she thought that he needed other care at that time. I will grant Malcook's motion and close the case.

UNDISPUTED FACTS

The following facts are undisputed except where noted.[1]

---

[1] Kenny moves the court to admit several exhibits. Dkt. 60. I will deny the motion as unnecessary. Kenny submitted his evidence with his response to Malcook's motion for summary judgment. Dkt. 61. I have considered his exhibits in determining whether the parties' proposed facts were genuinely disputed.

Kenny entered the Rock County Jail in November 2020 for a possible probation violation. Kenny's probation was revoked in February 2021, at which time he entered Department of Corrections custody even though he remained at the jail. The events on which Kenny bases his claim occurred between March and May 2021. The care he received before that provides context for his claim. Malcook worked at the jail as a nursing site manager.

In early December 2020, Kenny contracted COVID-19. Kenny started complaining that he had wheezing and a "rattle" while breathing. The jail's main health care provider, Dr. Caroline Pace, prescribed gabapentin. Kenny continued to complain of wheezing and rattling in his lungs, and Pace ordered chest X-rays. The results, which came back in early January 2021, were unremarkable. *See* Dkt. 61-3 at 1.

Kenny continued to complain of wheezing, rattling in his lungs, and shortness of breath. In one complaint, Kenny said that he was coughing so hard that he had pinched nerves in his back. (Another nurse answered that request. Dkt. 39-1 at 99.)

In late February 2021, Pace ordered another chest X-ray, which showed degenerative changes in Kenny's spine and shoulders. Dkt. 39-1 at 139. These changes included compression fractures at the junction of Kenny's lumbar and thoracic spine, which caused excessive rounding of the upper back. *See id.*

In March 2021, Kenny twice complained that his coughing and asthma had caused him to develop a painful pinched nerve between his shoulder blades. Dkt. 39-3 at 27, 29. Nurses advised him to stretch to relieve the pressure and to use a warm compress. *Id.* At the end of March, Kenny complained about being billed for health care he hadn't received, and that ibuprofen didn't help his pinched nerve. Dkt. 39-3 at 30. Malcook addressed Kenny's billing concern but did not respond to his concern about a pinched nerve. *Id.*

In April 2021, Kenny complained about nerve pain in his upper back and arms, and Pace approved Tylenol. 39-1 at 31; Dkt. 39-3 at 89. In mid-April, Kenny complained that Tylenol wasn't helping his nerve pain, and Malcook noted that he was using that medication (suggesting that it needed time to have an effect). Dkt. 39-1 at 127. A day later, Kenny filed a grievance in which he asked for medical help because he had a painful pinched nerve and his Tylenol was ineffective. *Id.* at 35. Kenny explained that his Tylenol provided some relief but that there were stretches when it would wear off. *See id.*; *see also* Dkt. 39-3 at 37. Malcook responded that the Tylenol needed time to be effective and that Kenny's gabapentin also helped nerve pain. Dkt. 39-1 at 35. A week later, Kenny requested an increase in his gabapentin, and Malcook informed him that Pace would increase his dosage.

Kenny made a similar complaint in early May 2021, and Pace prescribed ibuprofen for pain between doses of Tylenol. Kenny made two other similar complaints around that time, adding that his ibuprofen was also ineffective because it would wear off. Malcook responded, stating that she had scheduled him to see Pace and noting that his gabapentin had recently been increased. *Id.* at 40–41. Malcook told Pace about Kenny's complaints. Dkt. 39-3 at 42. Kenny asked for a refill of Tylenol and ibuprofen in mid-May, stating that they helped his nerve pain. Dkt. 39-3 at 43; *see also id.* at 57. That month, Kenny continued to complain of worsening nerve pain, though he explained that Tylenol, ibuprofen, and gabapentin provided some relief until they wore off. *See* Dkt. 39-3 at 45.

Pace evaluated Kenny at the end of May. Pace diagnosed Kenny with paresthesia (an abnormal sensation of the skin with no apparent physical cause), prescribed naproxen, and increased his gabapentin. Three days later, Pace prescribed lidocaine cream.

I will discuss additional facts as they become relevant to the analysis.

3

ANALYSIS

I allowed Kenny to proceed on medical care claims under the Eighth and Fourteenth Amendments. Dkt. 21 at 4–6. The Fourteenth Amendment would have applied to events that occurred before he entered DOC custody. *See id.* at 3–4. But Kenny has now made clear that the alleged denials of medical care occurred between March and May 2021, when he was in DOC custody, so those claims are governed by the Eighth Amendment. Kenny's claim is that Malcook blew off his complaints of persistent nerve pain in that period. *See id.* at 5–6.

The Eighth Amendment prohibits prison officials from consciously disregarding the serious medical needs of prisoners. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish an Eighth Amendment violation based on denial of medical care, Kenny must show that he had an objectively serious medical condition that Malcook consciously disregarded. *See Cesal v. Moats*, 851 F.3d 714, 721 (7th Cir. 2017). Malcook contends that Kenny cannot establish either point. But a reasonable juror could find, based on the summary judgment evidence, that Kenny's complaints of persistent nerve pain in his back and arms are a serious medical need. *See Walker v. Benjamin*, 293 F.3d 1030, 1039–40 (7th Cir. 2002); *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997).

The dispositive issue is whether Malcook consciously disregarded this need. Conscious disregard requires that Malcook is subjectively aware of that need. *Cesal*, 851 F.3d at 721. That means that Malcook knew of facts from which the inference could be drawn that a substantial risk of serious harm existed, and she actually drew that inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Conscious disregard involves intentional or reckless conduct, not mere negligence. *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010).

The Eighth Amendment entitles prisoners to "adequate medical care," that is, "reasonable measures to meet a substantial risk of serious harm." *See Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006). The Eighth Amendment doesn't require "specific care" or "the best care possible." *Id.*; *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Disagreement between Kenny and Malcook, or disagreement among medical professionals, about the proper course of treatment isn't enough to show conscious disregard. *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014); *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996).

Ignoring a prisoner's request for medical assistance outright can be enough to show conscious disregard of medical needs. *Petties v. Carter*, 836 F.3d 722, 729 (7th Cir. 2016) (en banc). If a medical professional has provided some care for a prisoner's condition, she consciously disregards the serious medical need only if her care is so inadequate that it demonstrates an absence of professional judgment, that is, that no minimally competent professional would have responded in that way in the circumstances. *See Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757, 763 (7th Cir. 2021); *Collignon v. Milwaukee Cnty.*, 163 F.3d 982, 989 (7th Cir. 1998). Courts must consider Kenny's care as a whole when deciding whether Malcook consciously disregarded his serious medical need. *Walker v. Peters*, 233 F.3d 494, 501 (7th Cir. 2000).

Based on the totality of Kenny's care, no reasonable juror could conclude that Malcook consciously disregarded his complaints of serious nerve pain. Malcook didn't respond to Kenny's late March 2021 complaint that ibuprofen wasn't helping his pinched nerve. But nurses had already instructed Kenny to stretch and use a warm compress, and he was receiving gabapentin, which is "used to treat nerve pain." *Arnett v. Webster*, 658 F.3d 742, 745 (7th Cir. 2011). Furthermore, many people in the community manage pinched nerves without medical

5

treatment. Malcook didn't address this concern initially, but the evidence doesn't support a reasonable inference that she actually thought that Kenny required further care at that time.

Kenny made similar complaints in mid-April 2021, but Malcook did not disregard them. She noted that his gabapentin treated nerve pain and advised him to give his Tylenol more time to take effect. Kenny acknowledged in one of these complaints that his Tylenol provided some relief for his nerve pain. There's no basis to infer that, when Malcook answered these complaints, she thought that Kenny's care was inadequate. Kenny again complained about nerve pain a week later, and Malcook informed him that Pace would increase his gabapentin.

Kenny continued to complain about nerve pain in May 2021, but again Malcook didn't ignore his concerns; she relayed them to Pace and scheduled an appointment. Pace saw Kenny later that month, evaluated him, increased his gabapentin, and prescribed new medications.

Kenny faults Malcook for not ordering these (or other) treatments sooner, but it's undisputed that Pace made all treatment decisions at the jail. *See* Dkt. 67 ¶¶ 115–16. Kenny says that Malcook was a supervisor, but there's no evidence that she had the authority to change Pace's treatment decisions. *See id.*; *see also Pulera v. Sarzant*, 966 F.3d 540, 553 (7th Cir. 2020) (holding that nurses were entitled to defer to a doctor's medical judgment); *Miller v. Harbaugh*, 698 F.3d 956, 962 (7th Cir. 2012) (defendants cannot be liable under 42 U.S.C. § 1983 "if the remedial step was not within their power").

I will grant summary judgment to Malcook because the undisputed facts show that she did not consciously disregard Kenny's serious medical needs.

ORDER

IT IS ORDERED that:

1. Defendant Brandi Malcook's motion for summary judgment, Dkt. 38, is GRANTED.

2. Plaintiff Kelvin Marshall Kenny's motion to admit evidence, Dkt. 60, is DENIED as unnecessary.

3. The clerk is directed to enter judgment and close the case.

Entered April 17, 2025.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge